# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## No. 7:13-CV-21-BO
## CONSOLIDATED ACTION

| | |
|---|---|
| AMEC ENVIRONMENT & | ) |
| INFRASTRUCTURE, INC., f/k/a AMEC | ) |
| EARTH & ENVIRONMENTAL, INC., | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| STRUCTURAL ASSOCIATES, INC. and | )    ORDER |
| TALON INDUSTRIES, INC., | ) |
|     Defendants/Third-Party Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| ZURICH AMERICAN INSURANCE | ) |
| COMPANY, | ) |
|     Third-Party Defendant. | ) |

This consolidated action comes before the Court on Zurich American Insurance's motion

to dismiss the third-party complaint for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. Also before the Court is AMEC Environment &

Infrastructure's motion to dismiss Structural Associates and Talon Industries' counterclaims for

failure to state a claim. The motions have been fully briefed and are ripe for adjudication. For the

reasons discussed below, Zurich American Insurance's motion is denied and AMEC Environment

& Infrastructure's motion is granted in part and denied in part.

## BACKGROUND

This action arises out of a construction project in Onslow County to replace a buried

fiberglass-reinforced pipeline at the Marine Corps Air Station located near the New River in

Jacksonville, North Carolina. AMEC Environment & Infrastructure (AMEC) was the general contractor on the pipeline project and held a contract for project with the United States Navy. Structural Associates (Structural) was a first-tier subcontractor that contracted with Talon Industries (Talon) to perform excavation activities. During the construction period, the existing pipeline cracked and 9,000 gallons of jet fuel were spilled. AMEC sued Structural and Talon seeking, *inter alia*, to recover environmental remediation expenses related to the spill. In two separate, later filed actions, Structural and Talon brought Miller Act claims against AMEC as well as Zurich American Insurance (Zurich), from which AMEC obtained a Miller Act payment bond in the amount of $2,890,914 for the pipeline project. By order entered October 22, 2013, the Court consolidated the three actions.

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Attain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts plead "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570.

2

I.    ZURICH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT AS TO TALON'S CLAIMS

Those who provide labor and materials for construction projects on public property, which is not subject to mechanics' or materialmen's liens, are protected by the Miller Act. 40 U.S.C. § 3131, *et seq*. The Miller Act provides that a person who has a direct contractual relationship with a subcontractor but no contractual relationship with the contractor furnishing the bond may bring a civil action on the payment bond upon giving notice to the contractor within ninety days from the date on which the person did or performed the last of the labor or supplied the last of the material for which the claim is made. 40 U.S.C. § 3133(b)(2). An action under § 3133 must be brought no later than a year after the day on which the last of the labor was performed or materials supplied. 40 U.S.C. § 3133(b)(4). In this circuit, the Court must consider "whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project," *United States ex rel. Noland Co. v. Andrews*, 406 F.2d 790, 792 (4th Cir. 1969) (citation omitted); labor and materials furnished to correct defects or make repairs will not toll the limitations period. *United States ex rel. Erie City Iron Works v. Fullerton Const. Co.*, 298 F. Supp. 1157, 1160 (D.S.C. 1969).

AMEC and Structural entered into a subcontract agreement effective November 9, 2010, for work in furtherance of AMEC's contract with the United States Navy. [DE 42-2]. Structural entered into a subcontract agreement with Talon on November 29, 2010, for work in furtherance of Structural's agreement with AMEC. [DE 42-3] By letter dated October 26, 2011, AMEC notified Structural that it would be withholding $100,000 until the resolution of a claim regarding damage to a pipeline. [DE 42-4]. Talon alleges in its third-party complaint that Structural issued Change Order 06 R1 on February 6, 2012, and that Talon performed work pursuant to its original

3

contract from May 31, 2011, through April 16, 2012. Talon was notified by Structural by email on February 3, 2012, that because AMEC was withholding $100,000 from payment due to Structural, Structural would be withholding $100,000 due to Talon for its October 2011 invoice. [DE 42-7]. Talon notified AMEC of its claim on the payment bond for $100,000 on March 22, 2012. [DE 42-7].

Zurich contends first that Talon's pre-suit notice to it was untimely as it was given beyond ninety days from date on which Talon did or performed the last of the labor or supplied the last of the material for which the claim is made. In its third-party complaint, Talon alleges that it gave notice of its intent to rely on the payment bond on March 22, 2012. The March 22, 2012, letter to AMEC states that "Talon has furnished labor, materials, equipment, and skilled professional expertise in a timely fashion under its contract . . . commencing on May 31, 2011 and continuing until October 28, 2011." [DE 42-7]. The letter further states that "[t]he amount of $100,000, plus interest, remains unpaid [and the] letter constitutes formal notice of Talon's intent to rely upon the payment bond for payment of all sums due for the labor, materials, supplies and equipment furnished to AMEC . . .." *Id.*[1]

Talon does not dispute that it was required to provide notice pursuant to § 3133(b)(2). Talon's notice given March 22, 2012, is beyond ninety days from the work that it completed as of

---

[1]The Court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" when deciding a motion to dismiss. *Sec'y of State for Def. v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir.2007) (internal citations omitted). There parties do not dispute the authenticity of the documents attached to the third-party complaint.

4

October 28, 2011. "[T]imely notice [is] a condition precedent to the right to maintain suit on a payment bond," and this circuit has "previously exempted from liberal construction the ninety-day limitation on notice provisions." *Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1342-43 (4th Cir. 1992). Though Talon contends that it provided AMEC with notice within ninety days of its completion of its work on the project as a whole, actually prior to its completion of work, such argument fails to recognize the statutory distinction between the notice requirement, which is to be provided within ninety days of last work performed *for which the claim is made*, and the limitations period which provides that suit must be brought within one year from the date on which last work is performed or materials supplied. *See United States for Use of Honeywell, Inc. v. A & L Mech. Contractors, Inc.*, 677 F.2d 383, 385 (4th Cir. 1982). It is precisely this distinction that is intended to prevent general contractors from being exposed to stale claims of which they had no notice. *Id.* at 386.

However, Talon has further alleged in its materials that it did not receive notice that Structural would withhold $100,000 from payment owed to Talon due to AMEC's withholding of $100,000 until February 3, 2012. [DE 42-7]. Talon asserts that Structural's response to its demand for payment stated that "as a result of AMEC's withholding of $100,000 from payment to [Structural], '$100,000 will be withheld from [Talon's] October 2011 invoice payment.'" *Id.*

Talon argues that equity should toll the notice provision to permit its March 22, 2012, notice to AMEC to be deemed timely. While the Court notes that a "reasonably prudent" subcontractor should have learned that it would not be paid on its October invoice before February, and indeed that the timing provisions of the Miller Act, which was enacted to protect laborers and materialmen, are meant to ensure prompt payment, "extreme circumstances might be

5

found equitably to excuse a failure to give notice strictly within the time provided." *United States for Use & Benefit of Miller & Bentley Equip. Co. v. Kelley*, 327 F.2d 590, 592 (9th Cir. 1964). Because Talon has sufficiently alleged that it did not know of any withholding on its October 2011 invoice until at least February 3, 2012, it should gain the benefit of this date when calculating the ninety-day notice period. Talon sent its notice to AMEC and the United States Navy on March 22, 2012, and the Court finds on these facts that its notice was therefore timely provided.

Insofar as Talon's letter was intended to provide AMEC with notice of its intent to rely on the payment bond for sums due for work performed after October 28, 2011, and pursuant to the change order in February 2012, it does not "state with substantial accuracy the amount claimed." 40 U.S.C. § 3133(b)(2). Certainly, "[i]n order for such notice to be meaningful . . . it must provide the general contractor with some idea of the magnitude of the claim—hence the 'substantial accuracy' requirement." *Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc.*, CIV. JKB-13-0598, 2014 WL 103825 (D. Md. Jan. 10, 2014). The only amount claimed with any certainty in the notice to AMEC was $100,000 due on Talon's October 2011 invoice. Thus, Talon's claim is limited to this amount.

Talon's suit against Zurich Insurance was filed on March 28, 2013, within one year from the date on which Talon alleges that it completed its work on the project, April 16, 2012. Though AMEC contends that Talon's performance through this date was in fact related to repairs and corrections, and not to Talon's original contract, the Court accepts as true at this stage of the proceedings that Talon's work in March and April 2012 was pursuant to Change Order 06 R1. Accepted change orders may be considered part of the original contract and in those

6

circumstances may be included in calculating the one year limitations period. *See e.g. United States v. Hartford Fire Ins. Co.*, 1:10CV1068, 2010 WL 5026950 (E.D. Va. Dec. 3, 2010) (measuring Miller Act limitations period from last of twenty-five change orders to original contract). Thus, Talon's Miller Act suit was timely filed, notice provided to AMEC was timely, and Zurich's motion to dismiss the third-party complaint with respect to Talon's claims is denied. Should discovery reveal that Talon's work in March and April of 2012 consisted solely of repairs and corrections, however, the Court may revisit its finding as timely suit is a condition precedent to a Miller Act claim.

II.    ZURICH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT AS TO STRUCTURAL'S CLAIMS

Zurich contends in its motion to dismiss first that Structural has failed to allege any facts that would show that its Miller Act claim is timely. After ninety days of nonpayment, a subcontractor may bring a civil action on the payment bond for the amount unpaid at the time the action is brought, but must do so no later than one year after the day on which the last of the labor was performed or material supplied by the person bringing the action. 40 U.S.C. § 3133(b)(1);(4).

As discussed above, mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. In its third-party complaint, Structural alleges that it has complied with all statutory and contractual prerequisites to filing an action, that notice was timely provided, and that more than ninety days but less than one year have elapsed from the last date that Structural provided labor and materials to the project. [DE 42 ¶ 7]. While the allegations in the complaint must be taken as true, the Court will not blindly presume that conditions precedent to filing suit under the Miller Act have been met. While it declines to dismiss Structural's third-party complaint at this time, should discovery or further motions practice reveal that Structural's

7

complaint is in fact untimely the Court shall dismiss Structural's claims at that time.

Zurich next contends that because Structural's contract with AMEC plainly shows that Structural is not entitled to any of its claimed damages, its claim against Zurich should be dismissed. Structural responds that, because the Court does not have the full subcontract before it at this time, dismissal of its claim on the basis of a partial document would be inappropriate.

Because Structural's allegations in its third-party complaint sufficiently provide a short and plain statement of its claim, Fed. R. Civ. P. 8(a), and because the Court does not have before it the entirety of the subcontract agreement, it declines to dismiss Structural's claim against Zurich at this time. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

III.     AMEC'S MOTION TO DISMISS COUNTERCLAIMS BY STRUCTURAL AND TALON

The Court has considered the counterclaims by Structural and Talon in light of the applicable standard on a motion pursuant to Rule 12(b)(6) and, for the reasons discussed below, dismisses only Talon's counterclaims for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes and for breach of contract.

North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C.Gen.Stat. § 75-1.1(a), prohibits unfair methods of competition and unfair or deceptive acts in practices in or affecting commerce. "A simple breach of contract, even if intentional, does not amount to a violation of the Act; a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989). Practices considered to be unfair are those deemed to be

8

"immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers," and deceptive practices are those that have the "capacity or tendency to deceive." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61-62 (1992) (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263 (1980)).

Talon's counterclaim as alleged and taken as true simply does not rise to the level of unfair or deceptive trade practices. Though the counterclaim references AMEC's unlawful exertion of power in withholding payment and purposeful breach intended to induce the counterclaimant into foregoing a defense and to gain leverage in AMEC's litigation related to the fuel spill, it also refers only to AMEC's allegedly intentional breach of contract, which, as noted above, does not support a UDTPA claim. "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950). At bottom, the conclusory statements alleged in support of the counterclaim for violation of North Carolina's UDTPA do not demonstrate substantially aggravating circumstances and simply fail to state a plausible claim for relief. AMEC's motion to dismiss this claim is therefore granted.

Structural and Talon did not specifically respond to AMEC's motion to dismiss their counterclaims for unjust enrichment/quantum meruit. "It is well established that in the absence of an express contract, a plaintiff may recover in *quantum meruit* on an implied contract theory for the reasonable value of services and materials rendered to and accepted by a defendant." *Catoe v. Helms Const. & Concrete Co.*, 91 N.C. App. 492, 497 (1988). There can be no recovery on an implied contract where an express contract covers the same subject matter. *Id.*

9

However, as the Fourth Circuit has previously held that a claim for quantum meruit against the prime contractor under the Miller Act may proceed, even in light of an express contract, the Court declines to dismiss Talon and Structural's unjust enrichment claims at this time. *United States v. Algernon Blair, Inc.*, 479 F.2d 638, 641 (4th Cir. 1973) (holding that "[a] plaintiff may join a claim for quantum meruit with a claim for damages from breach of contract" and noting that where there is a distinction between federal law and state law, federal law will control in Miller Act cases); *see also Datastaff Tech. Grp., Inc. v. Centex Const. Co., Inc.*, 528 F. Supp.2d 587, 599 (E.D.Va. 2007) (quantum meruit claim by second-tier subcontractor permitted to proceed).

Talon has also failed to specifically respond to AMEC's argument that its breach of contract claim should be dismissed as Talon has not alleged facts that would demonstrate that it was either in privity with AMEC or was an intended third-party beneficiary to AMEC's contract with Structural. AMEC's contract with Structural, attached to the defendants' counterclaims and third-party complaint, specifically provides that nothing in the agreement is deemed to "create any legal or contractual relationship between AMEC's Client and AMEC and any lower-tier subcontractor, including but not limited to any third-party beneficiary rights." [DE 42-2 ¶ 14]. In its breach of contract counterclaim, Talon does not allege that it had any contractual relationship with AMEC or that it was an intended third-party beneficiary of the contract between AMEC and Structural. The Court finds no basis in the allegations contained in Talon's breach of contract counterclaim upon which to permit it to proceed, and therefore grants AMEC's motion to dismiss this counterclaim.

In regard to the remainder of AMEC's arguments in its motion to dismiss, the Court finds

10

that the factual allegations as alleged are sufficient at this stage of the proceedings to permit Structural's remaining breach of contract counterclaim and Miller Act bond counterclaim to proceed. *See supra, section II.*

CONCLUSION

For the foregoing reasons, Zurich's motion to dismiss the third-party complaint [DE 46] is DENIED. AMEC's motion to dismiss defendants' counterclaims [DE 47] is GRANTED IN PART AND DENIED IN PART. Talon's breach of contract and Unfair and Deceptive Trade Practices Act counterclaims are DISMISSED.

SO ORDERED, this **4** day of April, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11