IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CONSOLIDATED ACTION
No. 7:13-CV-21-BO

| | |
|---|---|
| AMEC ENVIRONMENT & INFRASTRUCTURE, INC., f/k/a AMEC EARTH & ENVIRONMENTAL, INC., Plaintiff, v. STRUCTURAL ASSOCIATES, INC. and TALON INDUSTRIES, INC., Defendants. | **ORDER** |

This consolidated action comes before the Court on defendants Structural and Talon's motions for summary judgment. Also pending are defendants' motion in limine to exclude testimony and report of Charles Manning, motion in limine to exclude second report of Charles Manning, motion for joinder of Zurich as plaintiff, motion to set aside order on motion to compel, motion to strike declaration of Alvin Monroe, and Talon's motion to compel responses to interrogatories. A hearing was held on these matters before the undersigned on February 12, 2015, at Raleigh, North Carolina.

## BACKGROUND

This action arises out of a construction project at the Marine Corps' Air Station at New River in Onslow County, North Carolina. Plaintiff, AMEC, was the general contractor hired by the Navy to replace a buried fiberglass-reinforced pipeline that carried jet fuel. The new pipeline was to be placed under, around, and adjacent to the existing pipeline; the existing jet fuel pipeline was to stay in use during the construction. AMEC hired Structural Associates as a first-tier subcontractor and Structural hired Talon as a second-tier subcontractor.

On August 9, 2011, Talon was tasked with digging a "pothole" to uncover the existing pipeline. The pothole was to be located where the existing and new pipes would intersect so that the placement for the new pipe could be determined. Talon dug a pothole using an excavator and digging by hand with shovels. The existing pipe was uncovered, a four-foot high marker was placed, and the hole was refilled but the dirt was not compacted. Jet fuel was not running through the existing pipeline when Talon was engaged in its potholing activities. A few hours after Talon had completed the pothole and moved on to other activities, the Navy released fuel back into the existing pipeline. Only 3,000 gallons of the 12,000 gallons released arrived at its final destination in the fuel pits. An 18 inch "blowhole" was discovered within a few feet of where Talon had dug the pothole and jet fuel was leaking from the pipeline. Talon and Structural denied having caused the leak, and AMEC paid approximately $896,000 in remediation costs. The jet fuel pipeline replacement project has since been completed.

AMEC filed this action on January 29, 2013, alleging claims for negligence; breach of contract; indemnity; vicarious liability against Structural; gross negligence against Talon; strict liability under the North Carolina Oil Pollution and Hazardous Substances Control Act, N.C. Gen. Stat. § 143-215.75 *et seq.*; violations of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601, *et seq.*, as amended and the Superfund Amendments and Reauthorization Act of 1986 (SARA), 100 Stat. 1613; intentional misrepresentation/fraud against Talon, and unfair and deceptive trade practices against Talon. Structural and Talon have moved for summary judgment on all claims, as well as on Talon's one remaining counterclaim for *quantum meruit* against AMEC.[1]

---

[1] Structural and Talon's other counterclaims and third-party claims against Zurich American Insurance Company were dismissed by stipulations of dismissal entered December 31, 2014. [DE 199 & 120].

2

**DISCUSSION**

I.    MOTIONS IN LIMINE

Talon seeks to prohibit the admission of the testimony and expert report of AMEC's retained expert in this matter, Dr. Charles Manning, Jr., pursuant to Rules 104 and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Talon contends that Dr. Manning's opinion is based on speculation and hypothetical possibilities without a basis in fact and that his opinions are unreliable because he has cherry-picked facts on which to rely, he has employed improper deductive reasoning, and his *ipse dixit* methodology is not valid under *Daubert*.

Rule 702 of the Federal Rules of Civil Procedure provides that expert testimony is appropriate "when it will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness who is qualified as an expert may be permitted to testify where "(a) the the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.* A trial court has broad discretion under Rule 702 to admit or exclude evidence. *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994).

Review of Dr. Manning's report and testimony reveals that he properly employed the scientific method to arrive at his opinions and that his opinions are both reliable and relevant. Dr. Manning reviewed sixty-nine documents with information about the site, the potholing procedure, and the fuel spill and containment to arrive at his opinion. He further formulated two hypotheses and performed relevant calculations and testing in order to disregard one hypothesis

3

and arrive at his opinion. Indeed, Dr. Manning explicitly considered whether a toothed excavator bucket, the theory propounded by Talon's experts, or a finished edge excavator bucket caused the damage to the pipe, and arrived at his conclusion based on the evidence of variable force applied to the surface of the pipe. The Court finds in its discretion that Dr. Manning's opinions are not based on impermissible deductive or *ipse dixit* reasoning, but rather are based on his proper review of the available evidence, including witness testimony and the damaged section of pipe, application of scientific principles, and reliance on his education and qualification as a professional engineer. Talon's motion in limine [DE 57] is therefore denied.

Talon further moves to exclude the second report of Dr. Manning, arguing that is not a proper rebuttal or supplemental report and that it is not allowed by the scheduling order in this case.

Rule 26 of the Federal Rules of Civil Procedure provides that supplements to disclosures must be provided in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Specifically regarding expert reports, a party has a duty to supplement a materially incomplete or incorrect report or deposition testimony by the time pretrial disclosures are due under Rule 26(a)(3). Fed. R. Civ. P. 26(e)(2). While Talon is correct that courts will not permit parties to avert summary judgment by supplementing with a "new and improved" expert report, the Court does not find that allowing Dr. Manning's supplemental report would promote gamesmanship or delay. *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008).

Dr. Manning's supplemental report does not "sandbag [Talon] with claims and issues which should have been included" in his initial report. *Beller ex. Rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003) (citation omitted). Rather, his supplementation addresses

4

his perceived deficiencies in Structural and Talon's supplemental expert reports, the documents provided at deposition, and testimony given at deposition.

Failure to comply with the Rule 26 requirements of disclosure and supplementation may result in sanctions under Rule 37(c)(1), which provides that the non-disclosing party is not permitted to use the information or witness at trial, unless the failure to disclose or properly supplement was substantially justified or harmless. When deciding a request to exclude under Rule 37, a court considers "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Have considered the five *Southern States* factors relevant to a request to strike under Rule 37(c)(1), the Court finds that any failure on AMEC's part to comply with Rule 26 was harmless.

While Dr. Manning's supplemental report was served within hours of the close of discovery, Talon was not prejudiced as it was made aware at Dr. Manning's deposition that he would be responding to defendants' supplemental expert report. Talon and Structural received their requested extension of the discovery deadline and were able to depose Dr. Manning regarding his supplemental report after they had ample time to review it. Dr. Manning's supplemental report does not contain novel theories or conclusions not earlier disclosed. Moreover, allowing Dr. Manning's second report would not disrupt the trial as no trial date has been set in this matter, and Dr. Manning's supplemental report would assist a trier of fact. Finally, AMEC represents that Dr. Manning's second report was disclosed as soon as practicable after it was made aware of the data supporting Talon and Structural's expert opinions and this

5

information was provided to Dr. Manning. For these reasons, Talon's motion in limine to exclude second report of Charles Manning [DE 74] is denied.

## II. MOTION TO COMPEL

Talon's motion to compel is denied. Talon has not demonstrated that it complied with the federal and local rules which govern discovery disputes and *require* that parties make a good faith attempt to confer with the party failing to make a disclosure in an effort to obtain the information without court action. Fed. R. Civ. P. 37(a); Local Civil Rule 7.1(c); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 532 (E.D.N.C. 2012) (rules require that parties must meet and confer in good faith attempt to resolve discovery disputes without court action). Talon submits that it sent a letter to AMEC detailing why it believed that AMEC's responses were insufficient. This letter was sent on June 27, 2014, and the instant motion was filed on June 29, 2014. This fails to satisfy the good faith meet and confer requirement. Talon's motion [DE 78] is therefore denied.

## III. MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla

of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).[2]

A. *Negligence, breach of contract, and indemnity against Talon and Structural*

Genuine issues of material fact exist as to AMEC's negligence, breach of contract, and indemnity claims against defendants.

A finding of negligence requires a showing that defendants owed a duty to AMEC and that their nonperformance of that duty proximately caused AMEC's injuries. *Royal v. Armstrong*, 136 N.C. App. 465, 469 (2000). Structural and Talon contend that AMEC has proffered no evidence of the standard of care in potholing or of causation, and that AMEC cannot therefore satisfy its burden to show negligence. Though the Court agrees with defendants that AMEC's negligence claim should be subject to a professional negligence standard, *see Frankenmuth Ins. v. City of Hickory*, 760 S.E.2d 98, 101 (N.C. Ct. App. 2014) (applying professional negligence standard where "plaintiff is alleging negligent performance by defendant in its professional capacity as the operator"), the common knowledge exception applies and AMEC need not proffer expert testimony on the standard of care. The common knowledge exception applies where the trier of fact is able to, based on its common knowledge and

---

[2] In its response to the motions for summary judgment, AMEC requests that summary judgment be entered in its favor on its breach of contract and indemnity claims and on Talon's *quantum meruit* claim. In the absence of a properly filed motion for summary judgment, the Court declines to consider AMEC's request for judgment in its favor as to these claims. *See Johnson v. State Farm*, No. CA 12-00534-N, 2013 WL 3818707, at *2 (S.D. Ala. July 23, 2013) ("Rule 56(f) 'did not create a substitute for a cross-motion to summary judgment.'").

7

experience, decide the issues of the appropriate standard of care, failure to comply with the standard of care, and proximate cause. *Associated Indus. Contractors, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 411 (2004) *aff'd,* 359 N.C. 296, 608 S.E.2d 757 (2005). AMEC's negligence claim involves digging a hole approximately four feet deep in order to locate a pipeline. Talon's employees who dug the hole used an excavator, the operation of which does not require a license, and shovels. A jury would be able to use its common knowledge and experience to determine the adequacy of defendants' performance. *Id.* at 412 (citation omitted). Further, as the Court has not stricken the reports and opinions of Dr. Manning, a genuine issue of material fact exists as to causation, and defendants' motion for summary judgment as to AMEC's negligence claim is denied.

Defendants' arguments in support of summary judgment on the breach of contract and indemnity claims are grounded in their arguments in support of summary judgment on the negligence claim. As the Court has found that AMEC's negligence claims may proceed, defendants' request for summary judgment in their favor on the breach of contract and indemnity claims is denied. However, in light of the federal policy strongly favoring arbitration, the Court must address Talon's argument regarding the arbitration provision in its contract, being raised for the first time in the instant motion. Talon contends that AMEC's indemnity claim against it fails as a matter of law as the claim can only be arbitrated. Talon has not moved to compel arbitration, but rather seeks dismissal of AMEC's claim for its failure to arbitrate.

AMEC argues that Talon has waived its right to seek arbitration of its indemnity claim. "A party may waive its right to insist on arbitration if the party so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (alterations,

8

quotation, and citation omitted). While delay alone is an insufficient basis upon which to find a party has waived its right to insist on arbitration, *id.*, Talon has in fact delayed until the after the closing of discovery, waiting until the dispositive motion filing deadline before it notified the Court and AMEC that it the arbitration clause in the subcontract should govern AMEC's indemnity claim. Both AMEC and Talon no doubt invested significant resources in litigating this action for the eighteen months before Talon filed its motion for summary judgment, including AMEC's seeking consolidation of this action with Miller Act cases brought by Talon and Structural and Talon's filing of counterclaims against AMEC. Though Talon filed a brief in reply to AMEC's opposition to summary judgment, in which AMEC raised its waiver argument, Talon failed to address waiver or why it should not be deemed to have waived its arbitration right. In light of the stage of these proceedings, the prejudice to AMEC in having litigated its claims for eighteen months prior to Talon's notice that it would seek to enforce the arbitration provision, and Talon's failure to demonstrate why it should not be deemed to have waived its right to arbitration, the Court holds that Talon has defaulted on its right to compel arbitration.

B. *Gross Negligence against Talon*

Talon is entitled to summary judgment in its favor on AMEC's gross negligence claim. Gross negligence requires a showing that a defendant's conduct was wanton and done with conscious or reckless disregard for the rights and safety of others. *Parrish v. Hill*, 350 N.C. 231, 239 (1999). Wanton has been defined at an act "done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (quotation and citation omitted). AMEC contends that Talon's actions were grossly negligent in that, had it alerted Structural, AMEC, or the Navy that it had fractured the pipeline, the Navy would not have sent fuel through the pipe and no spill would have occurred. However, AMEC's own

9

expert has stated that the Talon employees likely did not know that they had fractured the pipeline when they were digging. Manning Dep. at 105 [DE 71-6]. The record in this matter simply does not support that there is a genuine issue of material fact as to whether Talon acted with gross negligence, and summary judgment is therefore appropriate.

C. *Strict Liability/North Carolina Oil Pollution and Hazardous Substances Control Act against Talon and Structural*

Defendants are entitled to summary judgment in their favor on AMEC's North Carolina Oil Pollution and Hazardous Substances Control Act (NC OPHSCA) claim. The NC OPHSCA makes it unlawful for anyone having control over oil or other hazardous substances to discharge, or cause to be discharged, such substances into the land or waters of the State. N.C. Gen. Stat. § 143-215.83. An entity has control over a hazardous substance when they transfer, store, or transport it immediately prior to discharge, which definition specifically includes carriers and bailees of the hazardous substance. N.C. Gen. Stat. § 143-215.77 (5). There is no dispute of material fact that at any time Talon or Structural was charged with transferring, storing, or transporting jet fuel at MCAS New River.

The case law applying § 143-215.83 liability primarily concerns entities which in fact transport, store, or transfer hazardous substances. *See e.g. Rudd v. Electrolux Corp.*, 982 F. Supp. 355, 362 (M.D.N.C. 1997) (parties agreed that defendants who owned land and tank in which hazardous chemical was stored had control over hazardous substance); *Jordan v. Foust Oil Co.*, 116 N.C. pp. 155 (1994) (company which transported gasoline by tanker truck had control over hazardous substance). In *Michael v. Huffman Oil Company, Inc.*, 190 N.C. App. 256 (2008), the court of appeals held that where the City of Burlington had obtained an easement across the property of an oil company to construct and maintain a waterline, the City did not

10

have control over any hazardous substance sufficient to impose liability under NC OPHSCA. Like the instant case, the City had contracted to construct a waterline in an area where there was later determined to be a hazardous substance discharge. Because the City had not engaged in any storing, transporting, or transferring of petroleum, the court of appeals affirmed summary judgment in favor of the City on the plaintiffs' NC OPHSCA claim. The Court finds this reasoning instructive and its application to the instant case results in summary judgment in favor of defendants.[3]

D. *Violations of CERCLA/SARA against Talon and Structural*

"CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA imposes strict liability for certain types of fuel spills. In order to establish CERCLA liability, a plaintiff must show

> (i) that the site in question is a 'facility' as defined in 42 U.S.C. § 9601(9); (ii) that a release or threatened release of a hazardous substance has occurred on the site; (iii) that the release or threatened release has caused plaintiff to incur response costs; and (iv) that each defendant falls within one of the categories of 'liable parties' set forth in § 9607(a).

*City of N. Miami, Fla. v. Berger*, 828 F. Supp. 401, 407 (E.D. Va. 1993). Defendants contend that they are not liable parties under CERLCA.

Section 9607 provides for four categories of potentially liable parties: current owners and operators, owners and operators at the time of the disposal, arrangers, and transporters. 42 U.S.C. § 9607(a)(1)-(4). AMEC contends only that defendants can properly be considered "operators" for purposes of CERCLA liability, and argues that the definition of "operator" set forth by the Supreme Court in *United States v. Bestfoods* appropriately includes defendants.

---

[3] AMEC has alleged only strict liability under NC OPSCHA in its complaint. [DE 1 ¶¶ 58, 100]. Thus, the Court need not consider whether defendants are liable under the general liability provision of the Act.

11

*Bestfoods*, 524 U.S. at 66-67 ("an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."). However, the Court in *Bestfoods* was concerned with the extent to which parent corporations may be held liable under CERCLA for activities by their subsidiaries. *Id.* at 60. "In no way can the Court's statement [in *Bestfoods*] be taken as direction to expand CERCLA liability so that anyone who played a causal role in a spill or leak would fall under the provision of operator liability." *Veolia Es Special Servs., Inc. v. Hiltop Investments Inc.*, No. CIV.A. 3:07-0153, 2010 WL 610094, at *4 (S.D.W. Va. Feb. 18, 2010). Indeed, defendants who "lacked authority to control the operations or decisions involving the disposal of hazardous substances at the Site or the contents of" an underground storage vessel of are not operators under CERCLA. *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 842 (4th Cir. 1992). There is no evidence to support that Structural or Talon had the authority to control the operations or decisions regarding the use or disposal of jet fuel at the MCAS site, and the Court thus holds that defendants are not liable under CERCLA/SARA as a matter of law.

E. *Intentional Misrepresentation/Fraud against Talon*

Talon is entitled to summary judgment in its favor on AMEC's intentional misrepresentation/fraud claim.

> To make out an actionable case of fraud plaintiff must show: (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false *or made it recklessly without any knowledge of its truth and as a positive assertion;* (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

12

*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568 (1988) (citation omitted) (emphasis in original). In opposition to summary judgment, AMEC has proffered no evidence to create as genuine issue of material fact as to whether Talon knew that it had damaged the pipeline and then knowingly represented to plaintiff that no damage had occurred, intending that AMEC should rely on that representation. As noted above, AMEC's own expert has stated that Talon's employees likely did not know they had damaged the pipeline. Talon's belief that it did not cause damage to the pipeline and its actions based thereon are insufficient to support a claim for fraud or intentional misrepresentation. *See e.g. GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007) ("denial of wrongdoing amounts to little; wrongdoing is not a straightforward matter of fact, and it is not fraud to deny it.).

F. *Unfair and Deceptive Trade Practices against Talon*

Talon is similarly entitled to summary judgment in its favor on AMEC's claim for unfair and deceptive trade practices (UDTPA) under Chapter 75 of the North Carolina General Statues. "To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252 (1998). A trade practice is unfair if it is immoral, unethical, oppressive, or substantially injurious. *Id.* (citation omitted). A trade practice is deceptive when it has "the tendency or capacity to mislead, or create the likelihood of deception. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (alterations and citation omitted).

AMEC has proffered no evidence that Talon engaged in immoral, unethical, oppressive, or substantially injurious trade practices. While fraud or intentional misrepresentation could

13

support a UDTPA claim, *id.*, the Court has found that AMEC has not proffered sufficient evidence to create a genuine issue of material fact on its fraud claim. *See also* Barker Depo. at 62 (AMEC's 30(b)(6) deponent responds that he does not know whether Talon or Structural ever deceived AMEC in any way). Thus, summary judgment is granted in favor of Talon on AMEC's UDTPA claim.

### G. *Vicarious Liability against Structural*

Structural's motion for summary judgment on AMEC's vicarious liability claim is denied. Under the subcontract agreement between AMEC and Structural, in addition to agreeing to perform work in a competent manner and provide non-defective work, Structural "assumes responsibility to AMEC for the proper performance of the Work of all lower-tier subcontractors and any acts and omissions in connection with such performance." Subcontract Agreement No. 10-15S-100412 ¶¶ 26; 14 [DE 13-2]. The sub-subcontract provides that Talon was bound to Structural for performance of work in the same manner that Structural was bound to AMEC. Subcontract Agreement # 10.09/153.50 ¶ 1.3 [DE 13-3].

In light of the foregoing, summary judgment is inappropriate on AMEC's claim that Structural is vicariously liable for any negligent acts or omissions of Talon. The motion as to this claim is therefore denied.

### H. *Unjust Enrichment/Quantum Meruit against AMEC*

Talon seeks summary judgment in its favor on its unjust enrichment/*quantum meruit* counterclaim against AMEC. Talon seeks $280,949 for work performed but for which it was not paid. Since the filing of the instant motion, Talon has dismissed its counterclaims against AMEC with the exception of its unjust enrichment counterclaim, for which it now seeks recovery in the amount of $52,828. Talon's Vice President, Jack Meyer, has declared that Talon

14

has not been paid by AMEC for $52,858 of excavation and fuel spill containment work and that because Talon did not cause the spill, Talon is entitled to be reimbursed for this work. Meyer Decl. ¶ 17 [DE 82-5]. Because a genuine issue of material fact exists as to whether Talon's negligence caused the fuel spill, summary judgment on Talon's counterclaim cannot be granted.

Accordingly, defendants' motions for summary judgment [DE 80 & 85] are granted in part and denied in part.

IV.   MOTION TO JOIN ZURICH AS PLAINTIFF

Structural and Talon have moved to join Zurich American Insurance Company as a plaintiff pursuant to Rules 17 and 19 of the Federal Rules of Civil Procedure. Defendants argue that discovery has revealed that the AMEC's claim is dominated by Zurich's subrogation claim, and that Zurich is thus the real-party in interest. Defendants' motion is denied.

First, the motion to join Zurich as a plaintiff was filed on July 23, 2014, well-beyond the deadline for joining additional parties in this suit. *See* [DE 35] ("motions to join additional parties and amend pleadings must be made no later than 1 October 2013."). Second, because North Carolina law does not require that Zurich be joined as a plaintiff, the Court declines at this stage of the litigation to do so.

Rule 19 of the Federal Rules of Civil Procedure requires joinder of a party if in the party's absence the court cannot accord complete relief, or the party claims an interest relating to the subject matter of the action and disposing of the action without such party may impair the party's ability to protect the interest or leave an existing party subject to substantial risk of multiple or inconsistent judgments. Fed. R. Civ. P. 19(a). Rule 17 provides that an "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "Whether a plaintiff is entitled to enforce the asserted right is determined according to the substantive law. In

15

a diversity action such as this one, the governing substantive law is the law of the state." *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).

Where, as here, there has been partial subrogation, "the insured is a necessary party plaintiff in any action against the tort-feasor for the loss [and] [t]he insured may recover judgment against the tort-feasor in such case for the full amount of the loss without the joinder of the insurance company." *Burgess v. Trevathan*, 236 N.C. 157, 160 (1952). Because the insurance company is a real party in interest it is a proper party, but it is within the Court's discretion to join the partially-subrogated insurer as a party. *See New v. Public Service Co. of N.C., Inc.*, 270 N.C. 137, 139-140 (1967) (citing *Burgess*, 236 N.C. at 161-62); *see also Henredon Furniture Indus., Inc. v. S. Ry. Co.*, 27 N.C. App. 331, 332 (1975) (insurer who has paid part of insured's claim is a proper but not necessary party).

While "the rule of law in the Fourth Circuit is that a partially subrogated insurer *may* be joined involuntarily as a party plaintiff," involuntary joinder of Zurich as a plaintiff in this action is not required as "[t]he plaintiff['s] rights and defendant[s'] obligations are neither enlarged nor diminished by the simple fact that plaintiff[] had insurance, the insurance company paid benefits, and the insurance company hopes to recoup its loss through subrogation." *Millwood v. Gen. Elec. Co.*, No. 4:99CV27-T, 1999 WL 33315674, at *1 (W.D.N.C. Aug. 5, 1999) (citing *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813 (4th Cir. 1982) (emphasis in original).

Moreover, where the insurer is a partial subrogee, if the insured recovers against the tort-feasor, "the insured sustains the relation of trustee to the insurance company for its proportionate part of the recovery, and . . . the tort-feasor can not be compelled against his will to defend two actions for the same wrong." *Burgess*, 236 N.C. at 161; *see also Virginia Elec. & Power Co.*, 485 F.2d at 84 ("[e]ven without joinder the partial subrogee is generally precluded from bringing a

16

a diversity action such as this one, the governing substantive law is the law of the state." *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).

Where, as here, there has been partial subrogation, "the insured is a necessary party plaintiff in any action against the tort-feasor for the loss [and] [t]he insured may recover judgment against the tort-feasor in such case for the full amount of the loss without the joinder of the insurance company." *Burgess v. Trevathan*, 236 N.C. 157, 160 (1952). Because the insurance company is a real party in interest it is a proper party, but it is within the Court's discretion to join the partially-subrogated insurer as a party. *See New v. Public Service Co. of N.C., Inc.*, 270 N.C. 137, 139-140 (1967) (citing *Burgess*, 236 N.C. at 161-62); *see also Henredon Furniture Indus., Inc. v. S. Ry. Co.*, 27 N.C. App. 331, 332 (1975) (insurer who has paid part of insured's claim is a proper but not necessary party).

While "the rule of law in the Fourth Circuit is that a partially subrogated insurer *may* be joined involuntarily as a party plaintiff," involuntary joinder of Zurich as a plaintiff in this action is not required as "[t]he plaintiff['s] rights and defendant[s'] obligations are neither enlarged nor diminished by the simple fact that plaintiff[] had insurance, the insurance company paid benefits, and the insurance company hopes to recoup its loss through subrogation." *Millwood v. Gen. Elec. Co.*, No. 4:99CV27-T, 1999 WL 33315674, at *1 (W.D.N.C. Aug. 5, 1999) (citing *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813 (4th Cir. 1982) (emphasis in original).

Moreover, where the insurer is a partial subrogee, if the insured recovers against the tort-feasor, "the insured sustains the relation of trustee to the insurance company for its proportionate part of the recovery, and . . . the tort-feasor can not be compelled against his will to defend two actions for the same wrong." *Burgess*, 236 N.C. at 161; *see also Virginia Elec. & Power Co.*, 485 F.2d at 84 ("[e]ven without joinder the partial subrogee is generally precluded from bringing a

16

a diversity action such as this one, the governing substantive law is the law of the state." *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973).

Where, as here, there has been partial subrogation, "the insured is a necessary party plaintiff in any action against the tort-feasor for the loss [and] [t]he insured may recover judgment against the tort-feasor in such case for the full amount of the loss without the joinder of the insurance company." *Burgess v. Trevathan*, 236 N.C. 157, 160 (1952). Because the insurance company is a real party in interest it is a proper party, but it is within the Court's discretion to join the partially-subrogated insurer as a party. *See New v. Public Service Co. of N.C., Inc.*, 270 N.C. 137, 139-140 (1967) (citing *Burgess*, 236 N.C. at 161-62); *see also Henredon Furniture Indus., Inc. v. S. Ry. Co.*, 27 N.C. App. 331, 332 (1975) (insurer who has paid part of insured's claim is a proper but not necessary party).

While "the rule of law in the Fourth Circuit is that a partially subrogated insurer *may* be joined involuntarily as a party plaintiff," involuntary joinder of Zurich as a plaintiff in this action is not required as "[t]he plaintiff['s] rights and defendant[s'] obligations are neither enlarged nor diminished by the simple fact that plaintiff[] had insurance, the insurance company paid benefits, and the insurance company hopes to recoup its loss through subrogation." *Millwood v. Gen. Elec. Co.*, No. 4:99CV27-T, 1999 WL 33315674, at *1 (W.D.N.C. Aug. 5, 1999) (citing *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813 (4th Cir. 1982) (emphasis in original).

Moreover, where the insurer is a partial subrogee, if the insured recovers against the tort-feasor, "the insured sustains the relation of trustee to the insurance company for its proportionate part of the recovery, and . . . the tort-feasor can not be compelled against his will to defend two actions for the same wrong." *Burgess*, 236 N.C. at 161; *see also Virginia Elec. & Power Co.*, 485 F.2d at 84 ("[e]ven without joinder the partial subrogee is generally precluded from bringing a

subsequent action against the defendants where a judgment has been rendered in a suit by the subrogor for the entire loss."). Thus, there is no concern regarding multiplicity of suits against defendants.

For these reasons, defendants' motion for joinder of Zurich as a plaintiff [DE 76] is denied.

V.   MOTION TO SET ASIDE ORDER

Defendants seek to set aside the portion of the August 8, 2014, order of United States Magistrate Judge James Gates awarding AMEC attorneys' fees associated with a discovery motion.

The Court may modify or set aside all or part of a magistrate judge's order if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); Local Civil Rule 72.4; *see also Tafas v. Dudas*, 530 F. Supp. 2d 786, 792 (E.D. Va. 2008) (review of non-dispositive discovery order is governed by the "clearly erroneous or contrary to law" standard). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

If a motion to compel is granted, a court *must*, after giving an opportunity to be heard, require the party whose conduct necessitated the motion pay the reasonable expenses incurred by the moving party in making the motion, unless a certain exception applies. Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). Here, United States Magistrate Judge Gates awarded attorneys' fees and expenses in favor of AMEC after granting its motion to compel initial disclosures and discovery from defendants. Judge Gates noted that defendants had failed to respond to the

17

motion to compel and that, irrespective of the unopposed nature of the motion, defendants had failed to comply with their discovery obligations under the Federal Rules of Civil Procedure.

Defendants contend that Judge Gates' order violates due process because it awards attorneys' fees and expenses against them without, as the rule requires, an opportunity to be heard. However, Judge Gates specifically directed defendants to respond to AMEC's affidavit regarding fees and expenses and to address not only the reasonableness of the fee request but also any grounds upon which expenses should not be awarded, as well as the allocation of liability between the defendants and their counsel.

As no expenses have actually been assessed against defendants, and Judge Gates' order plainly provides defendants an opportunity to be heard regarding the appropriateness of an expense award prior to its entry, the Court cannot find Judge Gates' order clearly erroneous or contrary to law. The motion to set aside [DE 96] is denied. The clerk is directed to refer AMEC's fees and expenses affidavit as well as defendants' objection thereto to United States Magistrate Judge Gates for consideration and entry of an order. Judge Gates can, at that time, consider the necessity at this stage of applying bates stamps to defendants' discovery responses.

VI.   MOTION TO STRIKE DECLARATION

Defendants have moved to strike the declaration of Alvin Monroe Jacobs because it contains impermissible lay witness testimony and inadmissible, undisclosed, expert witness testimony. Specifically, defendants argue that because Mr. Jacobs is not allowed to testify as an expert as he was not properly disclosed as one, AMEC is not allowed to rely on his testimony to defeat summary judgment.

In ruling on the instant motions, the Court has not relied on the declaration of Mr. Jacobs. Thus, the motion to strike [DE 114] is denied as moot.

18

## CONCLUSION

For the foregoing reasons, Talon's motion in limine [DE 57] is DENIED; Talon's motion in limine to exclude second report of Charles Manning [DE 74] is DENIED; Talon's motion to compel [DE 78] is DENIED; defendants' motion for joinder of Zurich as a plaintiff [DE 76] is DENIED; defendants' motion to set aside order [DE 96] is DENIED; and defendants' motion to strike [DE 114] is DENIED AS MOOT.

Defendants' motions for summary judgment [DE 80 & 85] are GRANTED IN PART AND DENIED IN PART. The following claims survive for trial or other disposition: AMEC's claims for negligence, breach of contract, indemnity, and vicarious liability and Talon's unjust enrichment/*quantum meruit* counterclaim against AMEC. The clerk is DIRECTED to refer this matter to the appropriate United States Magistrate Judge to conduct a pretrial conference. The clerk is further DIRECTED to refer AMEC's fees and expenses affidavit as well as defendants' objection thereto to United States Magistrate Judge Gates for consideration and entry of an order.

SO ORDERED, this __4__ day of March, 2015.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE